**STATE ex rel. William A. STINSON, Relator,**

v.

**The Honorable Ted HOUSE, Respondent.**

No. SC 90364.

Supreme Court of Missouri, En Banc.

July 16, 2010.

Rehearing Denied Aug. 31, 2010.

---

Theodore G. Pashos and Scott E. Simpson, Niedner, Bodeux, Carmichael, Huff, Lenox and Pashos LLP, St. Charles, Ann P. Hagan, Hagan, Hamlett & Maxwell LLC, Mexico, for Relator.

PATRICIA BRECKENRIDGE, Judge.

**Introduction**

William Stinson was ordered by the trial court to execute a medical records authorization to release his healthcare records in a wrongful death action filed against him and his parents. This Court granted Mr. Stinson's request for a preliminary writ of prohibition preventing the trial court from compelling execution of the authorization. Because the trial court abused its discretion by ordering Mr. Stinson to sign a medical records authorization permitting disclosure of his medical records that are protected by the physician-patient privilege, the preliminary writ is made permanent.

**Factual and Procedural Background**

On August 14, 2004, William A. Stinson was involved in a high-speed automobile collision that resulted in the death of Ricky J. Young. Mr. Young's daughter, Shauna Young, is the plaintiff in the present wrongful death suit. Her amended petition for wrongful death contains two counts. The first count seeks damages against Mr. Stinson for negligently operating the motor vehicle that caused her fa-ther's death. The allegations in the petition state that, at the time of the collision, Mr. Young was attempting to turn off of the interstate when Mr. Stinson, who was approaching from behind, moved into the left lane to pass and struck Mr. Young's vehicle. The petition further alleges that Mr. Stinson was under the influence of intoxicants at the time of the crash and was traveling in excess of the posted speed limit.

The second count in Ms. Young's petition seeks damages against Mr. Stinson's parents and their automobile dealership [1] for negligently entrusting Mr. Stinson with the vehicle involved in the collision. The petition alleges that Mr. Stinson's parents knew or should have known that Mr. Stinson was addicted to alcohol and drugs that impaired his driving ability, that he had received medical treatment for such addictions, and that he had been charged and convicted of numerous alcohol-related driving offenses prior to the August 14 collision.

In the course of discovery, Ms. Young served Mr. Stinson with a request for production asking him to execute a medical records authorization permitting the disclosure of all medical and psychological records pertaining to treatment he had received for alcohol, drug, or substance abuse problems dating back to 1990. Mr. Stinson objected to the request on the ground that the records sought were protected by physician-patient privilege, which had not been waived. The trial court overruled Mr. Stinson's objection and ordered him to execute the medical records authorization.

Thereafter, Mr. Stinson filed a petition for a writ of prohibition in the court of

---

1. Mr. Stinson's parents are officers and agents of William B. Stinson & Sons, Co. d/b/a W.B. Select Auto Center.

appeals to prevent the trial judge from compelling Mr. Stinson to sign the medical records authorization. After granting a preliminary order in prohibition, the court of appeals quashed its order and denied Mr. Stinson's writ petition. Mr. Stinson then petitioned this Court for a preliminary writ of prohibition, which the Court issued. Mo. Const. art. V, sec. 4.

## Discussion

In his sole point relied on, Mr. Stinson argues that he is entitled to a writ of prohibition to prevent the trial court from enforcing its order requiring execution of the medical records authorization because his medical records are protected by the physician-patient privilege, which has not been waived. Mr. Stinson contends that by ordering the execution of the medical records authorization form, the trial court acted in excess of its authority, thereby entitling him to a writ of prohibition.

■ Prohibition is an appropriate remedy when a party is ordered to produce material that is protected from discovery by some privilege. *State ex rel. Rogers v. Cohen*, 262 S.W.3d 648, 650 (Mo. banc 2008). Otherwise, if privileged material were produced, the damage to the disclosing party would be irreparable and could not be repaired on appeal. *Id.* (citing *State ex rel. Boone Ret. Ctr., Inc. v. Hamilton*, 946 S.W.2d 740, 741 (Mo. banc 1997)).

■ The physician-patient privilege is established by section 491.060.[2] The statute provides that a licensed physician or psychologist is "incompetent to testify ... concerning any information which he or she may have acquired from any patient while attending the patient in a professional character, and which information was necessary to enable him or her to pre-

scribe and provide treatment for such patient as a physician...." Section 491.060(5). The physician-patient privilege "applies to medical records and all aspects of discovery." *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 567 (Mo. banc 2006). *See also Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 62 (Mo. banc 1999); *State ex rel. Benoit v. Randall*, 431 S.W.2d 107, 109 (Mo. banc 1968).

■ In the present case, the medical records sought by Ms. Young fall within the protective scope of the physician-patient privilege. The medical records authorization form submitted with Ms. Young's request for production sought disclosure of "all personal health information pertaining to any care, treatment, evaluation, diagnosis and/or observation for medical, psychiatric or psychological services arising out of, or in any way relating to, alcohol, drug or substance abuse problems and any medical, psychiatric or psychological conditions relating thereto from January 1, 1990 to the present." By its terms, the request seeks access to records containing information used to evaluate, diagnose, and treat Mr. Stinson. Such records assuredly would include information acquired from Mr. Stinson by a physician or psychologist to prescribe and provide treatment and, therefore, fall within the scope of the physician-patient privilege.

■ Additionally, there is no evidence in the record that Mr. Stinson placed any of his medical conditions in issue or took any other steps to affirmatively waive the privilege. The mere fact that Mr. Stinson has denied liability and is defending against the present suit does not constitute a waiver of the privilege. *Rodriguez*, 996 S.W.2d at 63. Therefore, because the requested documents fall within the scope of the physician-patient privilege and there is no

**2.** Unless otherwise noted, all statutory references are to RSMo 2000.

evidence that Mr. Stinson waived the privilege, the privilege bars the discovery of the medical records Ms. Young requested.

Despite the applicability of the physician-patient privilege, Ms. Young argues that the trial court did not abuse its discretion by ordering Mr. Stinson to execute the medical records authorization because the requested records are relevant to her claim against Mr. Stinson's parents for negligent entrustment. Ms. Young claims the records are relevant because they help prove that Mr. Stinson's parents knew or should have known that he was incompetent to drive a motor vehicle.[3]

█ The mere fact that the privileged medical records may be relevant to Ms. Young's claim for negligent entrustment does not mean that the medical records are discoverable. The very nature of an evidentiary privilege is that it removes evidence that is otherwise relevant and discoverable from the scope of discovery. *See* Rule 56.01(b)(1). Therefore, the fact that the medical records might be relevant to Ms. Young's claim for negligent entrustment does not alter the conclusion that the records are undiscoverable.

Ms. Young also argues the trial court did not abuse its discretion by ordering Mr. Stinson to execute the medical records authorization because the disclosure of the requested medical records does not violate the public policy underlying the physician-patient privilege. She argues the privilege only is intended to protect patients from having the information they provide to their doctors used against them personally in a subsequent suit. Consequently, Ms. Young claims that because the medical records in this case will be used only to prove the liability of Mr. Stinson's parents,

the public policy underlying the privilege is not implicated. Ms. Young's public policy argument ignores the language in section 491.060.

█ As noted previously, section 491.060 states that a licensed physician or psychologist "shall be incompetent to testify ... concerning any information which he or she may have acquired from any patient. ..." The language of the statute does not limit the application of the privilege only to situations in which the confidential medical information will be used against the physician's patient. This Court must give effect to statutes as they are written. *Spradlin v. City of Fulton,* 982 S.W.2d 255, 261 (Mo. banc 1998). Because the legislature did not limit the scope of the privilege only to situations in which the confidential medical information will be used against the patient, the privilege applies to all circumstances in which a physician or psychologist is called on to give testimony or produce records concerning information that was acquired from a patient, regardless of whether the information will be used against the patient.

█ Moreover, contrary to Ms. Young's argument, the public policy underlying the physician-patient privilege is implicated when confidential information is disclosed, even if it will not be used against the patient. "The purpose of the physician-patient privilege is to enable the patient to secure complete and appropriate medical treatment by encouraging candid communication between patient and physician, free from fear of the possible embarrassment and invasion of privacy engendered by an unauthorized disclosure of information." *State ex rel. Woytus v. Ryan,* 776

---

**3.** One of the elements for negligent entrustment is that the entrustor knew or had reason to know of the entrustee's incompetence.

*McHaffie By and Through McHaffie v. Bunch,* 891 S.W.2d 822, 825 (Mo. banc 1995).

**920**

S.W.2d 389, 392 (Mo. banc 1989). The public policy of encouraging candid communication between patient and physician would be undermined if patients feared that their physicians or psychologists could disclose their confidential communications in any lawsuit, regardless of whether the information would be used against the patient or a third party. Information contained in a patient's medical file becomes no less private or potentially embarrassing to the patient merely because the information will be utilized against someone other than the patient. Not surprisingly, therefore, this Court previously found that the physician-patient privilege bars the disclosure of medical records belonging to patients who were not parties to the suit. *See, e.g., Benoit,* 431 S.W.2d 107.

Here, Mr. Stinson faces the same possibility of embarrassment and invasion of privacy that he would face if his medical records were released to prove claims against him personally, rather than his parents. Consequently, the requested disclosure fits squarely within the policy rationale underlying the physician-patient privilege. Ms. Young's argument to the contrary is without merit.

### Conclusion

The trial court abused its discretion by ordering Mr. Stinson to sign a medical records authorization to disclose medical records that were protected by the physician-patient privilege. If the privileged medical documents were required to be produced, Mr. Stinson would suffer irreparable injury that could not be repaired on appeal. Therefore, the preliminary writ of prohibition is made permanent.

All concur.