SUPREME COURT OF MISSOURI
 en banc

STATE ex rel. DARIN LUTMAN , ) Opinion issued December 21, 2021
 )
 Relator, )
 )
v. )
 ) No. SC99139
THE HONORABLE M. BRANDON BAKER, )
 )
 Respondent. )
 )

 ORIGINAL PROCEEDING IN PROHIBITION

 Darin Lutman petitions this Court for a writ of prohibition to prevent the continued

release of his medical records from Compass Health Network and Missouri Psychiatric

Center. Lutman contends the circuit court erred by ordering the release of his medical

records because his records were protected by the physician-patient privilege. Because

Lutman has neither placed his medical conditions at issue nor taken any action sufficient

to waive the physician-patient privilege, this Court’s preliminary writ is now made

permanent.

 Background

 In September 2019, a vehicle driven by Lutman crossed the centerline on Missouri

Highway 7 and struck a vehicle driven by Sondra Murrell. Sondra Murrell died as a result
of the crash. Her grandson, D.M., was in her vehicle and allegedly sustained personal

injuries.

 Immediately after the accident, Lutman told investigating police officers he

“blacked out,” “fainted,” or “had a heart attack” at the time of the accident. At a later date,

Lutman wrote a letter to Sondra Murrell’s family, apologizing for the accident and

attempting to explain what happened. Lutman wrote, “I simply became [an] alcoholic and

addicted to medication and lost control of my life.” He went on, “I want you to know I felt

like I was having a heart attack and was going to blackout. I tried to turn in to the gravel

on the left and that is all I remember.”

 Tanya Bush, Sondra Murrell’s daughter, filed a wrongful death suit against Lutman.

Timothy Murrell, Sondra Murrell’s son and D.M.’s natural father, intervened individually

and as D.M.’s next friend. 1

 On May 13, 2021, the Murrell family filed notices of depositions and subpoenas for

Lutman’s medical records with Compass Health Network and Missouri Psychiatric Center.

In response, Lutman filed a motion to quash those depositions and subpoenas, arguing the

requested information was protected by the physician-patient privilege. Lutman’s motion

emphasized he did not place his medical condition at issue in any pleading.

 On May 20, 2021, the circuit court issued an order overruling Lutman’s motion to

quash and commanding Compass Health Network and Missouri Psychiatric Center to

“produce and disclose all medical records and files in their possession related to Darin

1
 Hereinafter, the plaintiff, Bush, and intervenor, Timothy Murrell, will collectively be
referred to as the “Murrell family.” No disrespect is intended.
 2
Lutman.” (Emphasis added). The order stated, “The medical records at issue contain

information relevant to the claims raised in the above-referenced case.”

 On Friday, May 21, 2021, Lutman filed a petition for writ of prohibition in the court

of appeals, seeking to prevent the release of his medical records. Shortly after, Lutman’s

counsel e-mailed Bush’s counsel to confirm all parties would treat Lutman’s medical

records as sealed pending a ruling from the court of appeals. Bush’s counsel promptly

agreed to treat the records as sealed for the time being. Later that day, the court of appeals

denied Lutman’s petition.

 On Monday morning, May 24, 2021, Lutman’s counsel e-mailed Bush’s counsel to

advise Lutman would be filing a writ petition with this Court and reiterated all parties

should continue to treat Lutman’s medical records as sealed. Bush’s counsel responded by

stating, “Your writ was denied. We sent the records to the court reporters and to [Timothy

Murrell’s counsel].”

 On May 25, 2021, Lutman filed a petition for writ of prohibition with this Court.

On June 1, 2021, this Court issued a preliminary writ of prohibition commanding the circuit

court to take no further action in this matter other than to show cause as to why this writ

should not issue.

 Jurisdiction and Standard of Review

 This Court has jurisdiction to issue original remedial writs pursuant to article V,

section 4 of the Missouri Constitution.

 A writ of prohibition is appropriate: (1) to prevent the usurpation of judicial
 power when a lower court lacks authority or jurisdiction; (2) to remedy an
 excess of authority, jurisdiction or abuse of discretion where the lower court

 3
 lacks the power to act as intended; or (3) where a party may suffer irreparable
 harm if relief is not granted.

State ex rel. Becker v. Wood, 611 S.W.3d 510, 513 (Mo. banc 2020). Specifically,

“[p]rohibition is an appropriate remedy when a party is ordered to produce material that is

protected from discovery by some privilege.” State ex rel. Stinson v. House, 316 S.W.3d

915, 918 (Mo. banc 2010).

 The Physician-Patient Privilege

 Section 491.060(5) 2 governs the physician-patient privilege in Missouri. Section

491.060(5) provides:

 The following persons shall be incompetent to testify:
 …
 (5) A physician licensed pursuant to chapter 334, a chiropractor licensed
 pursuant to chapter 331, a licensed psychologist or a dentist licensed pursuant
 to chapter 332, concerning any information which he or she may have
 acquired from any patient while attending the patient in a professional
 character, and which information was necessary to enable him or her to
 prescribe and provide treatment for such patient as a physician, chiropractor,
 psychologist or dentist.

Notably, while section 491.060(5) speaks in terms of competence to testify, it “is construed

as a privilege statute.” State ex rel. Dean v. Cunningham, 182 S.W.3d 561, 566 (Mo. banc

2006). “Any information a physician acquires from a patient while attending the patient

and which is necessary to enable the physician to provide treatment is privileged.” State

ex rel. Jones v. Syler, 936 S.W.2d 805, 807 (Mo. banc 1997). Additionally, the

physician-patient privilege applies to medical records. Dean, 182 S.W.3d at 567. “The

privilege is for the benefit of the patient and belongs to the patient, not the physician.” Id.

2
 All statutory references are to RSMo 2016, unless otherwise noted.
 4
at 566 n.5. Therefore, even when medical records are directly relevant to a party’s claims,

if they are protected by the privilege, they are not discoverable. Stinson, 316 S.W.3d at

919. “The purpose of the physician-patient privilege is to enable the patient to secure

complete and appropriate medical treatment by encouraging candid communication

between patient and physician, free from fear of the possible embarrassment and invasion

of privacy engendered by an unauthorized disclosure of information.” Dean, 182 S.W.3d

at 567.

 The physician-patient privilege is not absolute, however, and “[t]he fact that

documents fall within the scope of the physician-patient privilege does not end the

inquiry.” State ex rel. Health Midwest Dev. Grp., Inc. v. Daugherty, 965 S.W.2d 841, 844

(Mo. banc 1998). A patient can waive the privilege by either express or implied waiver.

Dean, 182 S.W.3d at 567. The most common waiver cases “involve plaintiffs who

voluntarily place their medical condition in issue by filing a petition alleging that they

suffered physical or mental injuries.” Rodriguez v. Suzuki Motor Corp., 996 S.W.2d 47,

63 (Mo. banc 1999). Nonetheless, “[a] party may also impliedly waive the privilege

through an act showing a clear, unequivocal purpose to divulge the confidential

information.” Id. (emphasis added) (internal quotation marks omitted); see also Fitzgerald

v. Metro. Life Ins. Co., 149 S.W.2d 389, 391 (Mo. App. 1941) (explaining: “To make out

a case of implied waiver there must be a clear, unequivocal and decisive act showing such

purpose, or acts amounting to an estoppel. In other words, the intention to waive must

plainly appear or else the acts or conduct relied upon as constituting a waiver must involve

some element of estoppel.”).

 5
 Analysis

 It is undisputed that: (1) Lutman’s medical records fall within the scope of the

physician-patient privilege; and (2) Lutman never expressly waived the privilege. The only

question is whether Lutman placed his medical conditions in issue or took any other steps

to constitute implied waiver of the privilege. The Murrell family argues Lutman waived

the privilege through his statements to the investigating police officers immediately after

the accident and in his letter to the Murrell family.

 This Court addressed a similar challenge in Rodriguez, 996 S.W.2d at 54, in which

the plaintiff was seriously injured when the vehicle in which she was a passenger lost

control and rolled. The plaintiff sued the vehicle’s manufacturer, Suzuki, and the vehicle’s

driver, Dubis. Id. In response, Suzuki brought a cross-claim against Dubis, alleging she

was intoxicated. Id. Significantly, Dubis admitted to having consumed at least three

sampler glasses and two full glasses of wine shortly before the accident. Id. at 61. Suzuki

sought to discover the results of Dubis blood alcohol tests taken at the hospital immediately

following the crash. Id. Dubis moved to quash Suzuki’s requests, arguing the physician-

patient privilege applied. Id. The circuit court sustained Dubis motions, and Suzuki

appealed. Id.

 On appeal, Suzuki argued the circuit court erred in quashing its discovery requests

because Dubis waived her physician-patient privilege by: (1) testifying she was not

intoxicated in rebuttal to Suzuki’s offer of proof; (2) responding to questions concerning

her intoxication on cross-examination; and (3) having her counsel elicit testimony from

 6
other witnesses about the issue of intoxication. Id. at 63. 3 This Court rejected Suzuki’s

arguments, stating, “Suzuki has not demonstrated that Dubis waived her statutory privilege

under any recognized theory.” Id. This Court explained Dubis did not bring any action for

injuries she suffered and did not plead any facts creating an issue about her medical

condition. Id. “For the same reason that Dubis does not waive the privilege by filing an

answer denying the allegations in Suzuki’s cross-petition that she was intoxicated, she does

not waive the privilege by introducing non-medical evidence at trial.” Id. at 63-64. 4

 The Murrell family argues Lutman waived the physician-patient privilege at the

scene of the accident by telling investigating police officers that he “blacked out,”

“fainted,” or “had a heart attack.” 5 This argument is of no merit. To constitute an implied

waiver, the patient’s act must show a clear, unequivocal purpose to divulge confidential

3
 Prior to determining whether Dubis waived the physician-patient privilege, this Court
held Dubis met her burden of establishing that the blood alcohol tests taken after the
accident were not ordered by investigating police officers. Rodriguez, 996 S.W.3d at
62-63.
4
 Pursuant to Rodriguez, both parties agree Lutman’s denial of the allegations in the Murrell
family’s pleadings does not constitute a waiver of the physician-patient privilege. 996
S.W.2d at 63 (stating: “As explained in State ex rel. Hayter v. Griffin, 785 S.W.2d 590,
593 (Mo. App. 1990), a denial of an allegation cannot constitute a waiver of the physician-
patient privilege because to do so would force the patient to choose between suffering
judgment by default or waiving the physician-patient privilege.”); see also Stinson, 316
S.W.3d at 918 (Mo. banc 2010) (holding: “The mere fact that Mr. Stinson has denied
liability and is defending against the present suit does not constitute a waiver of the
privilege.”).
5
 Notably, Lutman’s statements to the investigating police officers at the scene of the
accident are not protected by the privilege because “the physician-patient privilege extends
only to information acquired by the physician for the purposes of prescribing and
treatment.” Hayter, 785 S.W.2d at 595; see also section 491.060(5). But whether
Lutman’s statements to the investigating police officers may be admissible has no bearing
on whether those statements also constitute a waiver of the privilege.
 7
information. Rodriguez, 996 S.W.2d at 63. Lutman’s statements to the investigating police

officers, which did not contain privileged information, do not indicate a clear, unequivocal

purpose to divulge his confidential medical information. See id. In other words, “it would

not appear that [Lutman’s statements] … were made with an intention and willingness on

the part of the patient to waive or renounce the secrecy secured by the statute.” State v.

Scott, 491 S.W.2d 514, 519 (Mo. banc 1973). In the same way Dubis’ mention of drinking

wine did not constitute a waiver in Rodriguez, 996 S.W.2d at 63-64, Lutman’s admission

of a medical condition does not constitute a waiver here. See also State v. Ermatinger, 752

S.W.2d 344, 350 (Mo. App. 1988) (testifying at a deposition that a doctor was his treating

physician did not waive the confidentiality of discussions pursuant to that treatment). 6 This

Court is not persuaded that Lutman’s brief and nondescript statements to investigating

police officers constituted an intent to waive the physician-patient privilege.

 Similarly, the Murrell family claims Lutman’s apology letter constituted a waiver

of the physician-patient privilege because Lutman stated to the Murrell family that he was

an addict who felt like he was having a heart attack or blacking out right before the crash.

Again, however, without more, Lutman’s statements in the letter do not clearly and

unequivocally indicate an intent to waive the physician-patient privilege. Even when read

6
 Other state courts that have addressed similar challenges also have held disclosing basic
facts about treatment, addiction, or the existence of a physician-patient relationship is
insufficient to establish a waiver. See, e.g., In re Lifschutz, 467 P.2d 557, 567 (Cal. 1970)
(revealing the existence of psychotherapist-patient relationship did not constitute a waiver);
Styers v. Superior Ct., Cnty. of Mohave, 779 P.2d 352, 354 (Ariz. Ct. App. 1989) (holding:
“One may acknowledge the fact of treatment without consenting to the disclosure of its
confidential details.”).
 8
in the light most favorable to the Murrell family, there is no way to reasonably construe

Lutman’s apology and explanation as an indication of his desire to share his confidential

medical records. 7 Moreover, contrary to the Murrell family’s claims, “[t]he mere fact that

the privileged medical records may be relevant … does not mean that the medical records

are discoverable. The very nature of an evidentiary privilege is that it removes evidence

that is otherwise relevant and discoverable from the scope of discovery.” Stinson, 316

S.W.3d at 919.

 For these reasons, Lutman did not waive the physician-patient privilege and the

circuit court erred in ordering the disclosure of his medical records. 8

7
 Furthermore, even had Lutman’s actions constituted an implied waiver of the physician-
patient privilege, “the open-ended scope of [the] authorizations is indefensibly broad.”
State ex rel. Stecher v. Dowd, 912 S.W.2d 462, 465 (Mo. banc 1995). Orders must provide
safeguards to protect the patient’s privacy. Benoit v. Randall, 431 S.W.2d 107, 110 (Mo.
banc 1968) (finding an order impermissible because it did not provide adequate
safeguards). Here, the circuit court’s order impermissibly granted the Murrell Family
access to all of Lutman’s records with the two healthcare providers, irrespective of the age
of the records or whether they were relevant to the medical conditions at issue. See also
State ex rel. Camillo v. Beck, 423 S.W.3d 795, 798 (Mo. App. 2013) (“Vague, broad, or
open-ended authorizations simply will not do.”).
8
 The Murrell family claims a writ of prohibition is inappropriate because Lutman’s
medical records were already disclosed. However, “[p]rohibition will lie to undo acts done
in excess of [the] court’s [authority], as long as some part of the court’s duties in the matter
remain to be performed.” State ex rel. Palmer by Palmer v. Goeke, 8 S.W.3d 193, 196
(Mo. App. 1999) (internal quotation marks omitted).
 The United States Supreme Court dealt with a similar challenge in Church of
Scientology of California v. United States, 506 U.S. 9, 12 (1992), and its holding is
instructive. In Church of Scientology, the issue was whether an appeal was moot because
confidential tape recordings had been disclosed prior to the appeal. Id. In holding the
appeal was not moot, the Supreme Court stated:

 Even though it is now too late to prevent, or to provide a fully satisfactory
 remedy for, the invasion of privacy that occurred when the IRS obtained the
 information on the tapes, a court does have power to effectuate a partial
 9
 Conclusion

 The preliminary writ of prohibition is made permanent.

 ______________________________
 Robin Ransom, Judge

All concur.

 remedy by ordering the Government to destroy or return any and all copies
 it may have in its possession. The availability of this possible remedy is
 sufficient to prevent this case from being moot.

Id. at 13. This Court is similarly able to effectuate a partial remedy because the harm to
Lutman is ongoing. Additionally, given the specific facts of this case, it would be unjust
to deny relief to Lutman solely because counsel for Bush disclosed Lutman’s medical
records in the brief period of time between the court of appeals’ denial of Lutman’s petition
and his petition to this Court.
 10