

## SUPREME COURT OF MISSOURI
### en banc

| | | |
|---|---|---|
| STATE ex rel. KIMBERLY BARKS, | ) | *Opinion issued March 1, 2022* |
| | ) | |
| Relator, | ) | |
| | ) | |
| v. | ) | No. SC99024 |
| | ) | |
| THE HONORABLE DANIEL PELIKAN, | ) | |
| | ) | |
| Respondent. | ) | |

### ORIGINAL PROCEEDING IN PROHIBITION

Kimberly Barks petitions this Court for a writ of prohibition or mandamus to prevent the disclosure of her medical records. Barks contends the circuit court erred by ordering the release of her medical records because her records were protected by the physician-patient privilege. This Court agrees and holds Barks did not waive the physician-patient privilege by pleading the affirmative defenses of comparative fault and assumption of risk. This Court's preliminary writ is now made permanent.

### Background

In August 2019, a golf cart driven by Barks was involved in an accident in St. Charles County, Missouri. Sheila Spencer was a passenger in the golf cart and allegedly sustained personal injuries. Spencer sued Barks, alleging Barks was negligent in operating

the golf cart because, among other reasons, Barks was intoxicated while operating the golf cart.

Barks denied Spencer's allegations, including that she operated the golf cart while intoxicated. Barks also, alternatively, asserted several affirmative defenses including comparative fault, implied primary assumption of risk, and implied secondary assumption of risk. Specifically, Barks claimed Spencer "assumed the risk of injury and accident by entering and continuing to ride in the golf cart if the driver of said vehicle was under the influence and therefore [Spencer] is barred from recovery against [Barks] and/or her fault should be compared and allocated."

Spencer sought discovery of Barks' medical records from the night of the accident through the following morning. Barks objected to Spencer's request and claimed the records were protected by the physician-patient privilege. In response, Spencer filed a motion to compel Barks to produce the requested medical records or, in the alternative, a motion to strike Barks' affirmative defenses. In the motion, Spencer argued Barks "waived the physician-patient privilege by affirmatively interjecting her intoxication into the case via her affirmative defenses."

After a hearing on the motion, the circuit court sustained Spencer's motion to compel discovery of Barks' medical records related to her "alleged intoxication on the date of the incident and following day." Barks then filed a petition for writ of mandamus or prohibition in the court of appeals, seeking to prevent the disclosure of her medical records. The court of appeals denied Barks' petition. Subsequently, Barks informed the circuit court she was going to file a petition with this Court. In response, the circuit court ordered Barks

2

to produce the requested medical records within 20 days of March 25, 2021, unless her petition to this Court was still pending.

On March 26, 2021, Barks filed a petition for writ of prohibition or mandamus with this Court. This Court issued a preliminary writ of prohibition and commanded the circuit court to take no further action in this matter, other than to set aside its order compelling discovery of Barks' medical records or show cause why this writ should not issue.

## Jurisdiction and Standard of Review

This Court has jurisdiction to issue original remedial writs pursuant to article V, section 4 of the Missouri Constitution.

> A writ of prohibition is appropriate: (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted.

*State ex rel. Becker v. Wood*, 611 S.W.3d 510, 513 (Mo. banc 2020) (quoting *State ex rel. Anheuser-Busch, LLC v. Moriarty*, 589 S.W.3d 567, 570 (Mo. banc 2019)). Specifically, "[p]rohibition is an appropriate remedy when a party is ordered to produce material that is protected from discovery by some privilege. Otherwise, if privileged material were produced, the damage to the disclosing party would be irreparable and could not be repaired on appeal." *State ex rel. Stinson v. House*, 316 S.W.3d 915, 918 (Mo. banc 2010) (citation omitted).

3

## The Physician-Patient Privilege

Section 491.060(5)[1] governs the physician-patient privilege in Missouri. Section 491.060(5) provides:

> The following persons shall be incompetent to testify:
> …
> (5) A physician licensed pursuant to chapter 334, a chiropractor licensed pursuant to chapter 331, a licensed psychologist or a dentist licensed pursuant to chapter 332, concerning any information which he or she may have acquired from any patient while attending the patient in a professional character, and which information was necessary to enable him or her to prescribe and provide treatment for such patient as a physician, chiropractor, psychologist or dentist.

Notably, while section 491.060(5) speaks in terms of competence to testify, it is construed as a privilege statute. *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 566 (Mo. banc 2006). "Any information a physician acquires from a patient while attending the patient and which is necessary to enable the physician to provide treatment is privileged." *State ex rel. Jones v. Syler*, 936 S.W.2d 805, 807 (Mo. banc 1997). Additionally, the physician-patient privilege applies to medical records. *Dean*, 182 S.W.3d at 567. The privilege is for the patient's benefit and belongs to the patient, not the physician. *Id.* at 566 n.5. Therefore, even when medical records are directly relevant to a party's claims, if they are protected by the privilege, they are not discoverable. *Stinson*, 316 S.W.3d at 919. "The purpose of the physician-patient privilege is to enable the patient to secure complete and appropriate medical treatment by encouraging candid communication between patient and

---

[1] All statutory references are to RSMo 2016, unless otherwise noted.

physician, free from fear of the possible embarrassment and invasion of privacy engendered by an unauthorized disclosure of information." *Dean*, 182 S.W.3d at 567 (citation omitted).

The physician-patient privilege is not absolute, however, and "[t]he fact that documents fall within the scope of the physician-patient privilege does not end the inquiry." *State ex rel. Health Midwest Dev. Grp., Inc. v. Daugherty*, 965 S.W.2d 841, 844 (Mo. banc 1998). A patient can waive the privilege by either express or implied waiver. *Dean*, 182 S.W.3d at 567. The most common waiver cases "involve plaintiffs who voluntarily place their medical condition in issue by filing a petition alleging that they suffered physical or mental injuries." *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 63 (Mo. banc 1999). However, "[a] party may also impliedly waive the privilege through an act showing a *clear, unequivocal purpose* to divulge the confidential information." *Id.* (emphasis added) (internal quotation marks and citations omitted); *see also Fitzgerald v. Metro. Life Ins. Co.*, 149 S.W.2d 389, 391 (Mo. App. 1941) (holding: "To make out a case of implied waiver there must be a clear, unequivocal and decisive act showing such purpose, or acts amounting to an estoppel. In other words, the intention to waive must plainly appear or else the acts or conduct relied upon as constituting a waiver must involve some element of estoppel.").

**Analysis**

The parties agree Barks' medical records fall within the scope of the physician-patient privilege. On appeal, the sole question is whether Barks' affirmative

defenses waive her physician-patient privilege. Spencer argues Barks' affirmative defenses constitute a waiver because they bring Barks' physical condition into issue.

This Court addressed a physician-patient privilege waiver challenge in *Rodriguez*, 996 S.W.2d 47. In *Rodriguez*, vehicle manufacturer Suzuki sought to discover a defendant-driver's medical records following an accident. *Id.* at 61. The defendant had admitted to drinking several glasses of wine prior to the accident. *Id.* The circuit court denied Suzuki's discovery requests, and Suzuki appealed. *Id.* Suzuki claimed the defendant waived her physician-patient privilege by testifying she was not intoxicated in rebuttal to Suzuki's offer of proof and responding to questions concerning her intoxication on cross-examination. *Id.* at 63. This Court disagreed, holding the defendant did not waive her physician-patient privilege. *Id.* This Court first explained a denial of an allegation does not constitute a waiver "because to do so would force the patient to choose between suffering judgment by default or waiving the physician-patient privilege[.]" *Id.* This Court then held that, by the same reasoning, the defendant's rebuttal to Suzuki's offer of proof could not constitute a waiver. *Id.* The defendant did not waive her physician-patient privilege "by introducing non-medical evidence at trial." *Id.* at 63-64. "Furthermore, the responses to questions on cross-examination that required her to divulge information about her intoxication are considered 'extorted' and, therefore, involuntary." *Id.* at 64.

*Rodriguez* approvingly cited *State ex rel. Hayter v. Griffin*, 785 S.W.2d 590 (Mo. App. 1990), a wrongful death action arising out of a fatal highway accident. *See Rodriguez*, 996 S.W.2d at 63-64. In *Hayter*, the plaintiffs alleged Hayter's diabetic condition caused him to lose consciousness, resulting in the subsequent accident. *Hayter*, 785 S.W.2d at

6

592. Hayter and the other defendants denied the allegations and claimed the plaintiffs were contributorily negligent. *Id.* at 593. Accordingly, the defendants sought for damages to be reduced based on the doctrine of comparative fault. *Id.* On appeal, a key issue was whether the defendants' assertion of the affirmative defense of comparative fault constituted a waiver of the physician-patient privilege. *Id.*

Ultimately, the court of appeals held the defendants' affirmative defense did not constitute a waiver of the physician-patient privilege because "comparative negligence does not seek damages for any injury to Hayter. It is purely defensive." *Id.* The court of appeals explained, "A defendant who asserts that the plaintiff was negligent and entitled to recover only on the basis of a comparison between the negligence of the parties remains an involuntary participant in the proceeding." *Id.* at 593-94 (quoting *State ex rel. Taylor v. Luten*, 710 S.W.2d 906, 907-08 (Mo. App. 1986)).

The present situation is nearly identical to *Hayter*. Barks has not sought any damages for injury, and her claims of comparative fault and assumption of risk are purely defensive.[2] *See Taylor*, 710 S.W.2d at 908 (holding: "invoking the doctrine of comparative negligence is an affirmative defense, not a claim for affirmative relief"). Affirmative defenses must be affirmatively pleaded or they are waived. *See* Rule 55.08; *Bateman v. Platte Cty.*, 363 S.W.3d 39, 42 (Mo. banc 2012). Accordingly, Barks' assertion of the affirmative defenses of comparative fault and assumption of risk remains involuntary

---

[2] The validity of implied secondary assumption of the risk as an affirmative defense is not at issue in this proceeding, so this Court does not consider the impact of the holding in *Coomer v. Kansas City Royals Baseball Corp.*, 437 S.W.3d 184, 194 (Mo. banc 2014).

7

because she would have waived those defenses if she did not affirmatively plead them. It would be "illogical and unacceptable" to require Barks to choose between waiving her physician-patient privilege or forfeiting her affirmative defenses of comparative fault and assumption of risk. *Rodriguez*, 996 S.W.2d at 63 (citing *Hayter*, 785 S.W.2d at 593).

Spencer argues the present situation is distinguishable from *Rodriguez* and *Hayter* because Barks' affirmative defenses *must* place her intoxication at issue. Spencer claims that, to succeed on her affirmative defenses, Barks must prove the fact of her intoxication. But Barks' affirmative defenses as pleaded are of a nature that they are relevant only if Spencer establishes Barks' intoxication as alleged in Spencer's petition. If Spencer introduces evidence at trial establishing Barks' intoxication, then Barks may rely on Spencer's evidence to pursue and establish her affirmative defenses and will not have waived her physician-patient privilege.

Additionally, although Barks' medical records may quickly and definitively establish whether Barks was intoxicated, "[t]he mere fact that the privileged medical records may be relevant … does not mean that the medical records are discoverable. The very nature of an evidentiary privilege is that it removes evidence that is otherwise relevant and discoverable from the scope of discovery." *Stinson*, 316 S.W.3d at 919.

Finally, Spencer contends the assertion of the physician-patient privilege is unfair in this situation.[3] This Court recognizes "the privilege is always invoked at the expense of

---

[3] This Court is cognizant of the threat that may be posed by allowing a party to raise an issue that may lead to a delayed waiver of the physician-patient privilege. In such a situation, the circuit court may exercise discretion to ensure the party does not receive an

truth-seeking" and the "equities supporting the privilege" are not great in all cases. *Rodriguez*, 996 S.W.2d at 64. The privilege, however, is set by statute. *Id.* Consequently, any challenges to the propriety of the physician-patient privilege in situations such as this must be made to the legislature. *Id.*; *see also State ex rel. McBride v. Dalton*, 834 S.W.2d 890, 891 (Mo. App. 1992) (holding: "The statute prevails over respondent's appeal to 'justice' as a reason to deny relator her statutory privilege to keep secret facts regarding her medical care.").

## Conclusion

The preliminary writ of prohibition is made permanent.

_____
Robin Ransom, Judge

All concur.

---

unfair advantage. *See State ex rel. McNutt v. Keet*, 432 S.W.2d 597, 601 (Mo. banc 1968) (holding the physician-patient privilege may not be used as both a "shield and dagger.").